VINCENT J. VELARDO (13610)
**LITCHFIELD CAVO LLP**
2455 E. Parleys Way, Suite 320
Salt Lake City, UT 84109
Telephone: 801-410-4982
Facsimile: 801-384-0554
velardo@litchfieldcavo.com

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br>v.<br><br>YOUTH HEALTH ASSOCIATES, INC. DBA LAKESIDE RTC; PATTERSON LAND AND LIVESTOCK, LLC, Interested Party; ALEX PATTERSON, Interested Party; and ROSS PATTERSON, Interested Party,<br><br>　　　　Defendants. | **COMPLAINT**<br><br>Civil Case No. 2:25-cv-00912<br><br>Judge _____ |

Plaintiff, Admiral Insurance Company ("Admiral"), by and through counsel, Litchfield Cavo LLP, alleges as follows:

### **PARTIES**

1. Plaintiff Admiral is a Delaware corporation, authorized to do business in Utah, with its principal place of business in Scottsdale, Arizona.

2. Defendant Youth Health Associates, Inc. dba Lakeside RTC ("YHA") is and at all times relevant a Utah corporation.

3. Defendant/Interested Party Patterson Land and Livestock LLC ("Patterson Land") is and at all times relevant a Utah business entity with its members domiciled in Utah.

4. Defendant/Interested Party Alex Patterson is and at all times relevant a resident of Utah.

5. Defendant/Interested Party Ross Patterson is and at all times relevant a resident of Utah.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1332(a)(1) by virtue of diversity of citizenship.

7. The amount in controversy exceeds $75,000 exclusive of interest and costs.

8. Admiral brings this action for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202.

9. Venue is proper pursuant to 28 U.S.C. § 1391(a).

## UNDERLYING LAWSUIT ALLEGATIONS

10. Plaintiff incorporates each of the allegations set forth above as though fully set forth herein.

11. Patterson Land, Alex Patterson, and Ross Patterson (collectively as "Underlying Plaintiffs") initiated a lawsuit against YHA by filing a complaint in Weber County, Utah ("Underlying Lawsuit"). A true and correct copy of the Underlying Complaint is attached as **Exhibit A**.

12. The Underlying Lawsuit alleges that YHA is a private organization that operates a residential treatment facility, which provided treatment and care to minors placed at its facility and was responsible for maintaining supervision and ensuring the safety of the minors in its care. Ex. A ¶¶ 3, 6.

13. The Underlying Lawsuit alleges that YHA admitted two minors, D.M. and D.P., as residents of its facility, and that YHA was aware of their mental health histories and behaviors, which included a known risk of leaving the facility and causing harm to others and/or to property, yet YHA allegedly failed to properly assess or evaluate these risks before or after admission. Ex. A ¶¶ 12–15.

14. The Underlying Lawsuit alleges that, at approximately 3:00 p.m. on May 9, 2024, YHA reported to local police that the two minors had run away from the facility. Ex. A ¶¶ 16–17.

15. After the police authorities responded and searched the area of Lakeside but were not able to locate the two minors, YHA did not continue to search for them. Ex. A ¶¶ 17–20.

16. The Underlying Lawsuit alleges that the two minors had previously eloped and caused damage to nearby persons and property, and that other YHA residents had likewise left the facility on prior occasions, creating problems for neighbors. Ex. A ¶¶ 20–22.

17. The Underlying Lawsuit alleges that, on or about May 10, 2024, the two minors entered a barn owned by Patterson Land and started a fire in an attempt to stay warm, the fire spread rapidly and went out of control despite efforts to contain it. Ex. A ¶¶ 23–24.

18. Emergency responders, neighbors, and the Underlying Plaintiffs allegedly attempted to salvage property during the fire, and that the barn and its contents were ultimately destroyed. Ex. A ¶ 27.

19. Additionally, a vehicle owned by Ross Patterson that was stored in the barn was completely destroyed, and that Alex Patterson suffered a severe hand injury while attempting to salvage items. Ex. A ¶¶ 28–29.

20.     The Underlying Lawsuit asserts one cause of action for Negligence against YHA, alleging that it owed a duty to prevent the minors from harming third parties, including the Underlying Plaintiffs, and that YHA breached its duties in numerous respects, including failure to adequately supervise residents, failure to implement reasonable monitoring protocols, failure to notify law enforcement and neighbors the risk associated with its residents, failure to train and staff the facility appropriately, and failure to comply with applicable state and federal regulations. Ex. A ¶¶ 35–44.

21.     It is alleged that, as a direct and proximate result of YHA's conduct, the Underlying Plaintiffs incurred extensive damages, including more than $1,000,000 in destruction to real and personal property owned by Patterson Land, a serious hand injury to Alex Patterson, and the total loss of a truck owned by Ross Patterson. Ex. A ¶¶ 30–33.

22.     The Underlying Lawsuit seeks economic and non-economic damages, consequential and other compensatory damages, attorneys' fees, costs, and pre-and post-judgment interest. Ex. A at Prayer.

23.     YHA's acts were also allegedly conducted in a knowing indifference and reckless disregard the rights and safety of the Underlying Plaintiffs and other community members, and the Underlying Lawsuit also seeks punitive damages. Ex. A ¶ 43.

## THE ADMIRAL POLICY

24.     Admiral issued an insurance policy to the named insured Youth Health Associates, Inc. under policy number CO000007220-01 with effective dates of June 5, 2023 to June 5, 2024 ("Policy"). A true and correct copy of the Policy is attached as **Exhibit B**.

25. The Policy contains Professional Liability Coverage Part and Commercial General Liability (CGL) Coverage Part, which are potentially implicated by the allegations of the Underlying lawsuit. Ex. B at DE23280820.

26. The Professional Liability Coverage Part provides coverage with limits of $1,000,000 per claim and $3,000,000 in the aggregate. The CGL Coverage Part provides coverage with limits of $1,000,000 per occurrence and $3,000,000 in the aggregate. Ex. B at DE23280820.

27. Admiral is defending YHA under the Policy pursuant to a reservation of rights. A true and correct copy of the reservation of rights letter dated October 14, 2024 is attached as **Exhibit C**.

28. The Professional Liability Coverage Part provides the following Insuring Agreement:

> SECTION I. INSURING AGREEMENTS
>
> COVERAGE A. PROFESSIONAL LIABILITY
> We will pay on behalf of the **Insured** those amounts, in excess of the PL Deductible and subject to the Limit of Liability for Professional Liability shown on the Declarations, which the **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** which directly result from a **Professional Incident** taking place within the **Policy Territory**, subsequent to the retroactive date shown in the Declarations and prior to the expiration or termination date of this Policy, for which a **Claim** is first made against the **Insured** during the **Policy Period** and reported to us in writing during the **Policy Period** or any applicable Extended Reporting Period, as described in SECTION IX. EXTENDED REPORTING PERIOD.

Ex. B at Form EO 13 26 08 20, page 1.

29. The Professional Liability Coverage Part contains the following pertinent definitions:

> F. **Claim Expenses** means:

5

1. *Fees, costs and expenses resulting from the investigation, adjustment, settlement and defense of a Claim;*

2. *Allowable expenses for the compensation of all Insureds for personally attending any legal proceeding at our request however these allowable expenses shall be subject to the Limit of Liability for Reimbursement of Lost Wages shown on the Declarations and no deductible shall apply;*

3. *The premiums for appeal, attachment or similar bonds, but only for bond amounts within the applicable Limits of Liability. We do not have to furnish these bonds;*

4. *Prejudgment interest awarded against the Insured on that part of any covered judgment we pay. If we make an offer to pay the applicable Limits of Liability, we will not pay any prejudgment interest based on that period of time after the offer;*

5. *All interest on the full amount of any covered judgment that accrues after entry of the judgment and before we have paid, offered to pay, or have tendered or deposited to a court of competent jurisdiction the part of the judgment that is within the applicable Limits of Insurance.*

*   *   *

I.  ***Damages*** *means a monetary and compensatory judgment, award or settlement, however, Damages do not include and we do not pay or reimburse:*

1. *amounts which are a multiple of compensatory Damages;*

2. *fines, penalties, sanctions, taxes or fees assessed against any Insured;*

3. *judgments or awards arising from acts deemed uninsurable by law;*

4. *fees owed to the Insured and any amounts incurred to collect such fees;*

5. *the return of fees or other compensation paid to any Insured;*

6. *past, present and future earned and unearned royalties, profits, fees, costs, expenses, commissions, and profits unlawfully or unjustly held or obtained, including the return, offset, disgorgement or restitution of such royalties, profits, fees, costs, expenses, commissions, and profits unlawfully or unjustly held or obtained;*
7. *non-pecuniary relief.*

*   *   *

    SS.    ***Professional Incident*** *means a negligent act, error or omission in the rendering of or failure to render Professional Services by the Insured or a person acting under the Insured's direction, control or supervision and for whose acts, errors or omissions the Insured is legally liable. All Professional Incidents that are logically or causally connected will be deemed one Professional Incident that, for the purpose of determining coverage under this Policy, occurred at the time of the earliest negligent act, error or omission*

*   *   *

    TT.    ***Professional Services*** *means services performed in person, by telephone or by other form of electronic communication, by an Insured for others involving specialized training, knowledge and skill while in pursuit of the profession or services stated in the Business Description on the Declarations, including Good Samaritan Acts.*

*   *   *

    UU.    **Property Damage** *means:*

        1. *physical injury to or destruction of tangible property, including all resulting loss of use of that property; or*

        2. *loss of use of tangible property that has not been physically injured or destroyed.*

*   *   *

    LL.    **Patient Property Damage** *means physical injury to, destruction or loss of use of tangible property sustained by your patient.*

*   *   *

    MM.    **Personal Injury** *means injury caused by one or more of the following offenses:*

        1. *false arrest, detention or imprisonment;*

        2. *malicious prosecution;*

        3. *wrongful entry or wrongful eviction;*

        4. *invasion of right of private occupancy.*

Ex. B at Form EO 13 26 08 20, pages 5-9.

30.     The Professional Liability Coverage Part contains the following pertinent exclusions that may limit or preclude coverage in relation to the Underlying Lawsuit:

*SECTION VI. POLICY EXCLUSIONS*

*1. EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS*

*We shall not be liable to defend, pay, indemnify or reimburse the Insured with respect to any Claim or Event, based upon, resulting from, arising out of, in consequence of, or in any way in connection with or involving, directly or indirectly:*

*   *   *

C.   *Intentional Acts*

1. *Any actual or alleged dishonest, fraudulent, criminal, malicious or intentional act, error, or omission by an **Insured**, however, this exclusion does not apply to **Claim Expenses** incurred in defending any such **Claim** until such time as there is a final adjudication, judgment, binding arbitration, or conviction of any **Insured**, or an admission of such conduct by the Insured. This exclusion does not apply to those **Insureds** who did not intentionally and knowingly commit, acquiesce or participate in this conduct.*

2. *The execution, creation, or commission, by the **Insured**, of a denial of service attack or the execution, creation or commission of **Malicious Code** which limits or prevents the use of the **Insured's Computer System** or any third party's computer system or network, however, this exclusion does not apply to **Claim Expenses** incurred in defending any such **Claim** until such time as there is a final adjudication, judgment, binding arbitration, decision or conviction of any **Insured**, or an admission of such conduct by the **Insured**. This exclusion does not apply to those **Insureds** who did not intentionally and knowingly commit, acquiesce or participate in this conduct.*

3. *Any actual or alleged gaining of any profit or advantage to which the **Insured** is not legally entitled, however this exclusion does not apply to **Claim Expenses** incurred in defending any such **Claim** until such time as there is a final adjudication, judgment, binding arbitration, decision or conviction of any **Insured**, or an admission of such conduct by the **Insured**. This exclusion does not apply to those **Insureds** who did not intentionally and knowingly commit, acquiesce or participate in this conduct.*

*   *   *

P.   *Property Damage and Personal Injury*

>*Any **Property Damage** or **Personal Injury**, however, we will reimburse the **Named Insured** for **Patient Property Damage** sustained while your patient is receiving **Professional Services** from an Insured provided that:*
>
>1. *The **Patient Property Damage** occurs during the **Policy Period**; and*
>
>2. *You report the **Patient Property Damage** to us as soon as practicable during the **Policy Period** or any Extended Reporting Period we provide as described in. SECTION IX. EXTENDED REPORTING PERIOD.*
>
>*The Limit of Liability for **Patient Property Damage** shown on the Declarations is the most we will pay for **Patient Property Damage** and no deductible shall apply.*

Ex. B at Form EO 13 26 08 20, pages 11-13.

31. The CGL Coverage Part of the Policy provides the following Insuring Agreement:

> **SECTION I – COVERAGES**
>
> **COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1.**     **Insuring Agreement**
>
>> **a.**     *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*
>>
>>> *(1)     The amount we will pay for damages is limited as described in SECTION **III** – LIMITS OF INSURANCE; and*
>>>
>>> *(2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.*
>>>
>>> *…*
>
>> **b.**     *This insurance applies to "bodily injury" and "property damage" only if:*

9

> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> ...

Ex. B at Form CG 00 02 04 13, page 1.

33. The CGL Coverage Part of the Policy contains the following pertinent definition:

> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> 17. "Property damage" mems.
>
>   a. Physical injury to tangible property including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical army that caused it; or
>
>   b. Loss of use of tangible property that is not physically injured. All such loss of me shall be deemed to occur at the time of the "occurrence" that caused it.

Ex. B at Form CG 00 02 04 13, pages 15, 17.

33. The CGL Coverage Part of the Policy contains the following exclusions that may limit or preclude coverage in relation to the Underlying Lawsuit:

> 2. **Exclusions**
>
>    **This insurance does not apply to:**
>
>    a. **Expected Or Intended Injury**
>
>    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Ex. B at Form CG 00 02 04 13, page 2.

34. The CGL Coverage Part of the Policy also contains the following endorsement titled as Elopement Exclusion that modifies insurance:

10

### *ELOPEMENT EXCLUSION*

*This endorsement modifies insurance provided under the following:*

*COMMERCIAL GENERAL LIABILITY COVERAGE FORM*

*This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" actually or allegedly arising out of, related to, caused by, contributed to by, or in any way connected with actual, alleged or threatened past, present or future claims arising in whole or in part, either directly or indirectly, out of any:*

1. *"Elopement"; or*

2. *The "insured's" actual or alleged negligent employment, investigation, supervision, hiring, training or retention of any "employee", "insured" or person for whom the "insured" is legally responsible and whose conduct involves observation or monitoring for "elopement"; or*

3. *The failure to provide an environment safe from or warn of the dangers of, or prevent or fail to report to the proper authorities, any "elopement".*

*This exclusion applies to any claim or "suit" regardless of whether "elopement" is the initial precipitating cause or is in any way a cause of "bodily injury", "property damage" or "personal and advertising injury" and regardless of whether any other actual or alleged cause contributed concurrently, proximately, or in any sequence, including whether any actual or alleged "bodily injury", "property damage" or "personal and advertising injury", arises out of a chain of events that includes "elopement".*

*The following is added to the DEFINITIONS Section of this Policy:*

*"Elopement" means the departure of a resident, patient or client from the care, custody or control of an "insured" without the "insured's" observation or knowledge of departure.*

*We shall have no duty to investigate, defend or indemnify any insured against any loss, claim, "suit," demand, fine or other proceeding alleging injury or damages of any kind, to include but not limited to "bodily injury," "property damage," or "personal and advertising injury" to which this endorsement applies.*

Ex. B at Form AI 08 76 02 20.

  35. Additionally, the Policy contains the following anti-stacking endorsements that may limit or preclude coverage in relation to the Underlying Lawsuit:

> *This endorsement modifies insurance provided under the following:*
>
> *PROFESSIONAL LIABILITY COVERAGE PART*
>
> *In consideration of the premium charged, it is agreed and understood that SECTION VI 1., EXCLUSIONS APPLICABLE TO ALL INSURING AGREEMENTS is amended to add the following exclusion:*
>
> *This insurance does not apply to: Any Claim or Suit, or part thereof, for which any insurance is afforded under the Commercial General Liability coverage part of this Policy.*
>
> *If any Insuring Agreement and the Commercial General Liability coverage past are alleged to apply to a Claim or Event or part thereof, no more than one Insuring Agreement or the Commercial General Liability coverage past will apply and we shall have the right to designate which Insuring Agreement or the Commercial General Liability coverage part applies and we will not pay more than the highest applicable limit of insurance available for the coverage part we designate. All other terms and conditions of the Policy remain unchanged and apply.*

Ex. B at Form EO 13 38 0816.

* * *

> *This endorsement modifies insurance provided under the following:*
>
> *COMMERCIAL GENERAL LIABILITY COVERAGE PART*
>
> *In consideration of the premium charged, it is agreed and understood that SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions; COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions; and Coverage C Medical Payments, 2. Exclusions are amended to add the following exclusion(s):*
>
> *This insurance does not apply to: Any "bodily injury", "property damage", or "personal and advertising injury" or part thereof, for which any insurance is afforded under the Professional Liability coverage pet of this Policy.*
>
> *If the Commercial General Liability coverage past and the Professional Liability coverage part are alleged to apply to any "bodily injury", "property damage", or "personal and advertising injury" arising from the same "occurrence", offense and or professional incident (as defined by the Professional Liability coverage part) or past thereof, or series of continuous, related or repeated "occurrences", offenses, and, or professional incidents, or past thereof, we shall have the right to designate which coverage past is applicable to the "bodily injury", "property damage", or "personal and advertising injury" based on our determination of the predominant issues presented considering allegations, fact and circumstances of the claim or "suit" and we will not*

> *pay more than the highest applicable limit of insurance available for the coverage part we designate.*
> *All other terms and conditions of the policy remain unchanged and apply.*

Ex. B at Form EO 12 51 12 13.

\* \* \*

> *L. Stacking of Limits*
>
> *Under no circumstances shall more than one Insuring Agreement apply to any Claim or Event under this Policy. In the event that more than one Insuring Agreement is alleged to apply to a Claim or Event, we shall have the right to designate which Laming Agreement shall apply and we shall not pay more than the highest applicable Limit of Liability for the Insuring Agreement we designate.*

Ex. B at Form EO 13 26 08 20, page 16.

36. Even assuming coverage exists, which Admiral denies, the Policy contains the following Limit of Liability provisions that limit liability:

> SECTION VII. LIMITS OF LIABILITY AND DEDUCTIBLE
>
> A. The Limit of Liability as shown on the Declarations and the rules detailed below fix the maximum amount we are obligated to pay for all **Damages** for each **Claim** or **Related Claim** under this Policy, as detailed in SECTION I. INSURING AGREEMENTS. The Limits of Liability shall be subject to the Aggregate Limit as shown on the Declarations for each coverage part and shall be part of, and not in addition to, the Policy Aggregate shown on the Declarations.
>
> \* \* \*
>
> YY. **Related Claims** means Claims based upon, arising from, in consequence of, directly or indirectly resulting from, or involving in any way continuous, repeated, the same, related or substantially similar facts, circumstances, subjects, situations, decisions, causes, persons, transactions, events, classes of persons or events, or a continuous, repeated, the same, related, or a substantially similar series of facts, circumstances, subjects, situations, decisions, persons, transactions, class of persons or events.

Ex. B at Form EO 13 26 08 20, page 9, 14.

## CLAIM FOR DECLARATORY RELIEF

37. Plaintiff incorporates each of the above allegations as though fully set forth herein.

13

38. An actual, present, and justiciable controversy exists between Admiral and Defendants regarding whether the Policy affords any coverage or imposes any duty to defend or indemnify YHA in connection with the claims asserted in the Underlying Lawsuit.

39. The Professional Liability Coverage Part does not apply because the claims do not arise from a "Professional Incident," which the Policy defines as a negligent act, error, or omission in the rendering of professional services requiring specialized training, knowledge, or skill, whereas the Underlying Complaint alleges knowing and reckless conduct unrelated to the provision of such services. Here, the alleged failure to prevent residents from leaving the facility and causing the alleged property damage and resulting bodily injury did not arise from a "Professional Incident" as defined in the policy.

40. Coverage is further excluded under the Professional Liability Coverage Part because the claims asserted in the Underlying Lawsuit arise from property damage and/or personal injury, all of which are expressly excluded under that part of the Policy.

41. Coverage is also excluded under the Professional Liability Coverage Part to the extent that the Underlying Plaintiffs seek any punitive damages, which are uninsurable as a matter of Utah law pursuant to Utah Code § 31A-20-101(4).

42. Coverage is excluded under the CGL Coverage Part because the claims arise out of the elopement of residents from YHA's facility, and the Policy's Elopement Exclusion bars coverage for any damages arising out of, related to, or in any way connected with elopement.

43. Even assuming coverage were otherwise available, which Admiral denies, the Policy's anti-stacking provisions prohibit recovery under more than one coverage part and limit Admiral's liability to the highest applicable limit designated under the Policy.

44. Admiral has complied with all contractual and legal obligations in connection with this matter and is currently providing a defense to YHA in the Underlying Lawsuit pursuant to a full and complete reservation of rights.

45. Accordingly, a judicial determination is necessary and appropriate at this time to determine respective rights of Plaintiff and Defendants under the Policy with respect to the Underlying Lawsuit.

46. Plaintiff requests a declaration from this Court that:

   a. There is no coverage under the policy for Defendants because the facts alleged in the underlying Complaint do not give rise to coverage;

   b. As there is no coverage under the Policy, Admiral has no duty to defend or indemnify YHA for any claims asserted in the Underlying Lawsuit or any subsequent amendments.

## PRAYER FOR RELIEF

47. WHEREFORE, Plaintiff Admiral prays for the following relief:

For a declaration that:

   a. There is no coverage under the Policy for YHA because the liability alleged in the Underlying Lawsuit filed by the Underlying Plaintiffs is specifically excluded by the Policy;

   b. As there is no coverage under the Policy, Admiral has no duty to defend or indemnify YHA for any claims asserted by the Underlying Plaintiffs in the Underlying Lawsuit, or any subsequent amendments;

   c. For such other and further relief as the Court deems just and proper.

DATED this 14th day of October, 2025.

**LITCHFIELD CAVO LLP**

*/s/ Vincent J. Velardo*
Vincent J. Velardo
*Attorneys for Plaintiff*